**Dezaiffe v. State Farm Fire & Casualty Co.**

*Joseph Colavecchia,* for plaintiff.
*J. Michael Dorezas* and *Michael J. Wagner,* for defendants.

REILLY, *P.J.,* April 9, 1984 — Plaintiffs' complaint in assumpsit and trespass alleges a failure and refusal to settle an insurance claim under plaintiffs' homeowners policy resulting in emotional distress, mental anguish and worry to plaintiffs and they seek to recover damages in excess of $10,000 under their trespass count as set forth above. In seeking to recover, plaintiffs' rely on the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 Pa. C.S. §2011 et seq.) and rely primarily on Deetz v. Nationwide Mutual Insurance Company for authority for their position. This court recognizes that Deetz is a common pleas decision and therefore not binding in this jurisdiction, but it must further be noted that even under Deetz, plaintiffs' position is fatal. Deetz holds that even if an unfair trade practice exists plaintiffs are nonetheless barred from recovering in trespass on a theory of intentional infliction of emotional distress. Deetz does, however, hold that where an insured sufficiently alleges that insurer's conduct constituted unfair or deceptive practices prohibited by the Unfair Insurance Practices Act, a cause of action in as-

sumpsit under the Unfair Trade Practices and Consumer Protection Law of Pennsylvania may lie.

Therefore, plaintiffs' count in trespass must be stricken and plaintiffs directed to amend their complaint in accordance with the above memorandum.

Wherefore, the court enters the following:

## ORDER

Now, this April 9, 1984, upon consideration of preliminary objections filed on behalf of defendant above-named, it is the order of this court that said objections be and are hereby sustained and plaintiffs' count in trespass in their complaint be and is hereby stricken. It is the further order of this court that plaintiffs shall file an amended complaint as set forth in the attached memorandum within 20 days from date hereof.

REILLY, *P.J.*, April 1, 1985 — The complaint in this case alleges that plaintiffs were injured and their home damaged when an automobile crashed into their bedroom in the early morning hours of September 17, 1982. The first amended complaint in assumpsit filed against defendant is in two counts. Count I is an action to recover under the terms of a homeowners insurance policy, which was issued to plaintiffs by defendant, for the damage to the home and its contents in the amount of $8,169.91. Count II is an action, also in assumpsit, based on the Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S. §201-1, et seq. (Consumer Protection Law). In Count II, plaintiffs are seeking treble damages, as authorized under §201-9.2 of the Consumer Protection Law, based on certain allegedly deceptive practices and bad faith dealings of defendant. Defendant has filed preliminary objections in the form of a demurrer to Count II of

plaintiff's amended complaint. It is the determination of these objections which is currently before the court.

Defendant's claim is that plaintiffs are precluded from filing a cause of action as stated in Count II of their amended complaint as insurance companies are not subject to regulation under the Consumer Protection law. The standards for considering preliminary objections in the nature of a demurrer are quite strict and are set forth in Gekas v. Shapp, 469 Pa. 1, 5-6, 364 A.2d 691, 693 (1976):

"A demurrer admits every well-pleaded material fact set forth in the pleadings to which it is addressed as well as all inferences reasonably deducible therefrom, but not conclusions of law. Buchanan v. Brentwood Federal Savings and Loan Association, 457 Pa. 135, 320 A.2d 117 (1974); Bordon v. Baldwin, 444 Pa. 577, 281 A.2d 892 (1971); Papieves v. Lawrence, 437 Pa. 373, 263, A.2d 118 (1970). In order to sustain the demurrer, it is essential that the plaintiff's complaint indicate on its face that his claim cannot be sustained, and the law will not permit recovery. Hoffman v. Misericordia Hospital of Philadelphia, 439 Pa. 501, 267 A.2d 867 (1970); Schott v. Westinghouse Electric Corp., 436 Pa. 279, 259 A.2d 443 (1969); Papieves v. Lawrence, supra. If there is any doubt, this should be resolved in favor of overruling the demurrer. Clevenstein v. Rizzuto, 439 Pa. 397, 266 A.2d 623 (1970)."

It is not surprising that Count II has drawn this preliminary objection. Our search reveals no Pennsylvania appellate court case answering the issue of whether the insurance industry is subject to the Consumer Protection Law. In a very thoughtful and persuasive opinion, the Court of Common Pleas of Dauphin County held that the provisions of the

Pennsylvania Consumer Protection Act do apply to the insurance industry and that an insured has a cause of action against his insurer for conduct that is unfair or deceptive within the meaning of that act. See Deetz v. Nationwide Mutual Ins. Co., 20 D. & C. 3d 499 (1981). On the other hand, in a very brief opinion, the United States District Court for the Eastern District of Pennsylvania held to the contrary on the very same issue. Layton v. Liberty Mutual Fire Ins. Co., 577 F.Supp. 1 (E.D., Pa. 1983).

Clearly, the Pennsylvania Consumer Protection Act provides a private cause of action to recover damages resulting from acts or practices declared unlawful by §3 of the Act and authorizes, but does not mandate, treble damages. 73 P.S. §201-9.2(a). Section 3 prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 P.S. §201-3. The phrase "unfair or deceptive acts or practices" is defined in section 201-2(4) and includes "engaging in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. §201-2(4)(xvii). Section 201-2(4) (xvii) "was designed to cover generally *all* unfair and deceptive acts or practices in the conduct of trade or commerce." Commonwealth v. Monumental Properties, Inc., 459 Pa. 450, 478, 329 A.2d 812, 826 (1974) (Emphasis added). The Supreme Court also stated in Monumental Properties that the already broad language used in the Consumer Protection Act was to be construed broadly and liberally so as to effectuate as fully as possible the legislature's purpose of preventing unfair or deceptive practices.

"The legislature realized, as has often been stated, that no sooner is one fraud specifically defined and outlawed than another variant of it appears. Rather than restricting courts and the enforcing authorities solely to narrowly specified types of unfair

and deceptive practices, the legislature wisely declared unlawful "any other fraudulent conduct." This is a common and well-accepted legislative response to the mischief caused by unfair and deceptive market practices." Commonwealth v. Monumental Properties, Inc., 459 Pa. at 479, 329 A.2d at 826.

Defendant's main contention supporting dismissal is that this situation should be governed by the Unfair Insurance Practices Act (U.I.P.A.) 40 P.S. §1171.1 et seq., exclusively and that, as that Act does not provide for a private cause of action, Count II of the amended complaint should be dismissed. We disagree.

The legislature chose to expressly exclude certain businesses from regulation under the Consumer Protection Law:

"The provisions of this act shall not apply to any owner, agent or employe of any radio or television station, or to any owner, publisher, printer, agent or employe of a newspaper or other publication, periodical or circular, who, in good faith and without knowledge of the falsity or deceptive character thereof, publishes, causes to be published or takes part in the publication of such advertisement." 73 P.S. §201-3. However, the Consumer Protection Law provides no express exclusion from its provisions for the insurance industry. If it were the intent of the legislature to exclude the insurance industry it could easily have done so. It could also have excluded insurance companies from the definition of "person" under the act. It did not. Rather, under section 201-2(2) a " 'person' means natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities." The legislature could also have excluded the

insurance industry from the definition of "Trade and Commerce." Again, it did not.

"Trade" and "commerce" mean the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth." 73 P.S. §201-2(3). Clearly, the insurance industry fits squarely within the above definitions.

In a very recent decision, the Superior Court held that public insurance adjusters and public adjuster contracts are regulated by, and are subject to, the Consumer Protection Law. Culbreth v. Lawrence J. Miller, Inc., 318 Pa. Super. 374, 477 A.2d 491 (1984). Though the court found that public adjusters were not part of the "business of insurance" and expressly declined to answer the issue presented here, they did say that even if public insurance adjusters were part of the business of insurance and subject to the U.I.P.A., they would also be subject to the Consumer Protection Law as the U.I.P.A. "does not expressly provide nor does it evidence an intent that the regulation of public adjusters thereunder be exclusive." Culbreth v. Lawrence J. Miller, Inc., 477 A.2d at 498. The same rationale is equally applicable to the issue presented here.

Further, defendant has pointed out no irreconcilable conflict or inconsistency between the U.I.P.A. and the Consumer Protection Act. As such, we hold that the insurance industry is subject to regulation under both of the above acts. See Appeal of Yerger, 460 Pa. 537, 333 A.2d 902 (1975). (In absence of manifestly contrary intention on part of legislature, construction of two statutes which allows both to operate is mandatory.) The courts have in

other instances declined to use another statute as the basis of finding the Consumer Protection Law inapplicable. See Deetz v. Nationwide Ins. Co., 20 D & C 3d at 507 and Culbreth v. Lawrence J. Miller, Inc., 477 A.2d at 499-500 which cite the following cases as instances where other statutes have been held applicable along with the Consumer Protection Act: Safeway Investment Corp. v. Commonwealth, 44 Pa. Commw. 417, 404 A.2d 720 (1979) (usury statutes); Pennsylvania Bankers Ass'n. v. Commonwealth Bureau of Consumer Protection, 58 Pa. Commw. 170, 427 A.2d 730 (1981) (Banking Code); Commonwealth v. Armstrong, 74 D. & C. 2d 579 (1974) (Fictitious Names Act); Bolden v. Potamkin-Auerbach Chevrolet, Inc., 470 F.Supp. 618 (E.D., Pa. 1979) (Truth in Lending Act and Pa. Motor Vehicle Sales Finance Act.)

Not only did the legislature not provide any language to the effect that the remedies provided in the U.I.P.A. were to be exclusive, to the contrary, the language of the present U.I.P.A., enacted in 1974, shows that the legislature did not intend to limit other remedies available against insurance companies:

"§ 1171.13. Provisions of act additional to existing law

The powers vested in the Commissioner by this Act are additional to any other powers to enforce any penalties, fines or forfeitures authorized by law with respect to the methods, acts and practices declared to be unfair and deceptive." 40 P.S. § 1171. 13. This language would seem to indicate that the remedies provided under the U.I.P.A. were meant to be additional to any existing law. The Consumer Protection Law was enacted in 1968 and was thus in existence when the new U.I.P.A. was enacted in 1974. We can reasonably infer that the legislature did not in-

tend to preclude recovery under the Consumer Protection Act.

The case of D'Ambrosio v. Pa. Nat. Mut. Cas. Ins. Co., 262 Pa. Super. 331, 396 A.2d 780 (1978) aff'd, 494 Pa. 501, 431 A.2d 966 (1981), and the other cases relied on by the district court in Layton (577 F. Supp. at 2) all refused to recognize a *common law* cause of action against an insurance company for punitive damages or emotional distress resulting from bad faith conduct by the insurer. In all of these cases the basis for not allowing the common law actions was that to do so would have constituted inappropriate judicial legislation as such actions were not provided for by statute. The present action is clearly different. The action here is based on explicit statutory authority — there is no question of judicial legislation in allowing this cause of action. In fact, if we were to inject the concept of exclusivity into the U.I.P.A., when there is no legislative directive for such, we would, to some extent, be invading the province of the legislature by such judicial implication. The legislature could have provided explicit language to the effect that the U.I.P.A. remedy is to be exclusive, as it has in other Pennsylvania statutes. See, e.g., Pa. Business Corporation Law, 15 Pa. C.S. §1515K. It did not.

It is not clear that the U.I.P.A. adequately serves to deter bad faith conduct in all instances. As to the civil penalties provided for at 40 P.S. §1171.11, an action may be filed only by the Commissioner. Moreover, it is unclear whether such penalty would do anything to compensate the policyholder. Finally, the fines provided for would seem to be an inadequate deterrent: while the policyholder in this case alleges damages in excess of $8,000 (which in other cases could obviously be much higher), the U.I.P.A. only imposes a $5,000 penalty for each violation (40

P.S. §1171.11(1)) — a bargain from the company's point of view. What the U.I.P.A. does provide, however, is a clear reference to determine what acts constitute unfair trade practices in the insurance business which may be referred to in applying the Consumer Protection Law.

This court finds no reason for exempting the insurance business from the Consumer Protection Act regulations. No one can reasonably argue that the business of selling insurance coverage is not a service or product which can be subject to unfair and deceptive practices. Insurance is advertised the same way other services or products are advertised and it is sold the same way other services or products are sold. Further, it is clear that insurance contracts are contracts of adhesion. "An insurance contract is not a negotiated agreement; rather its conditions are by and large dictated by the insurance company to the insured." Brakeman v. Potomac Ins Co., 472 Pa. 66, 72, 371 A.2d 193, 196 (1977). The very nature of the insurance contract requires as comprehensive a set of remedies as is available against any other business.

It is interesting to note that in its brief in support of preliminary objections filed to the original complaint in this action, defendant put forth the very point of law which it is now challenging. Defendant there stated: "Under Pennsylvania law, an insured can recover under the Unfair Trade Practices and Consumer Protection Law if he adequately states a cause of action against his insurer." Defendant went on to cite the Deetz case which it now contends was an "ill-advised decision."

Defendant's second contention supporting dismissal is that plaintiffs do not allege a "purchase" as a result of an unlawful, deceptive activity. This claim is clearly in error. Plaintiffs allegedly pur-

chased a policy of insurance from defendant under which defendant insured plaintiffs against all risks of physical loss to their dwelling and personal property. Plaintiffs contend that they have suffered a covered loss and that defendant has wrongfully refused to honor the policy. Plaintiffs obviously have made a purchase and now believe they have been deceived as to the coverage they were to receive. Plaintiffs also allege that defendant has engaged in other unlawful and deceptive practices. Given the broad scope of coverage under section 201-2(4) (xvii) of the Consumer Protection Law, as discussed above and pointed out by the Court in Commonwealth v. Monumental Properties, Inc., supra, the Plaintiffs have alleged acts by defendant sufficient to bring the cause of action under Section 201-9.2 of the Consumer Protection Act.

We note that this matter is here on preliminary objections and, obviously, our decision here reflects in no way on the merits of plaintiffs' claim. However, since we hold that a cause of action exists under the Unfair Trade Practices and Consumer Protection Law, defendants' demurrer to Count II of the amended complaint is denied.

Accordingly, the court enters the following

### ORDER

Now, this April 1, 1985, following argument, it is the order of this court that defendant's preliminary objections be and are hereby dismissed.